UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA QUIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22 C 6618 |
| | ) | |
| PARK TOWER CONDOMINIUM | ) | Judge Rebecca R. Pallmeyer |
| ASSOCIATION and THE HABITAT | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Amanda Quist brings several housing discrimination claims against Defendants Park Tower Condominium Association ("the Association") and The Habitat Company. Defendants have moved to dismiss Count VII of Plaintiff's complaint, her state law claim for intentional infliction of emotional distress, for failure to state a claim. *See* FED. R. CIV. PRO. 12(b)(6). Defendants' motion [11] is denied.

## BACKGROUND[1]

On or about August 28, 2022, Plaintiff Amanda Quist, a Black woman, applied to purchase a condominium on Chicago's North Side. (Compl. [1] ¶¶ 1, 9.) Ms. Quist owns an emotional support dog, which she relies on to enjoy daily activities due to her "significant medically documented needs."[2] (*Id.* ¶ 1.) The building in which Quist sought to purchase a unit, however,

---

[1]      For the purposes of deciding Defendants' motion, the court accepts as true the factual allegations that Plaintiff pleads in her Complaint. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

[2]      In her responsive brief, Ms. Quist clarifies that she suffers from "severe PTSD, anxiety, and a litany of other mental afflictions." (Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Resp.") [16] at 4.) Defendants argue that Plaintiff's specification amounts to the impermissible assertion of new claims. (Defs.' Reply in Supp. of their Mot. to Dismiss ("Defs.' Reply") [18] at 3 (citing *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 972 (N.D. Ill. 2008).) The court disagrees; these details are consistent with the Complaint, and the court is thus free to consider them. *See Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 753 (7th Cir. 2001); *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997); *Wendt v. Handler, Thayer &*

maintains a no-dog policy.  (*See id.* ¶¶ 34–35.)  So, along with her application, Quist submitted

paperwork seeking the accommodation of permission to keep an emotional support animal.  (*Id.*)

In response, "the Association" asked for specific information regarding Quist's medical care and

details regarding her diagnosis (Quist does not identify the individual[s] who made this request).

(*Id.* ¶ 12.)  Quist invited the Association to join a three-way call with herself and her care provider,

but the Association declined (again, the persons who made this decision are not identified).  (*See

id.* ¶ 13.)  Quist's care provider also provided his email address, fax number, and phone number

so that the Association could follow up with him directly.  (*See id.* ¶ 14.)  Quist additionally offered

receipts from her doctor visits to the Association to prove her ongoing therapeutic relationship.

(*Id.* ¶ 15.)

Ms. Quist's efforts were ill-received.  In or about September 2022, still seeking approval

of emotional-support-animal accommodation, Quist spoke with the property manager for the

Association.  During that conversation, she alleges, an employee of the property manager referred

to Quist as a "monkey" and refused to accept her documentation.  (*Id.* ¶ 17.)  After this interaction,

Quist suffered panic attacks, and she experienced stress that exacerbated an existing heart

condition.  (*Id.* ¶ 18.)  Due to the stress, she lost a significant amount of weight and experienced

hair loss.  (*Id.*)

Because the Association refused to approve Quist's request or even to accept her

documentation showing that it was medically necessary for her to live with her dog, Quist canceled

the purchase agreement.  (*Id.* ¶ 22.)  As a result, Quist forfeited her $3,000 earnest money deposit

(*id.* ¶ 23) and spent approximately $16,000 residing in hotels while she searched for a substitute

unit (*id.* ¶ 24).

After Quist canceled the sale, she returned to the building to retrieve packages of hers

that had been delivered there.  (*Id.* ¶ 19.)  The property manager would only allow Quist to retrieve

---

*Duggan, LLC*, 613 F. Supp. 2d 1021, 1033 (N.D. Ill. 2009).  In any event, the new facts asserted
in Plaintiff's response do not affect the court's resolution of Defendants' motion.

her packages while being escorted by three security officers. (*Id.*) During this visit, an employee who was unaware of the canceled sale also referred to Quist as a "monkey." (*Id.* ¶ 20.) The Association refused to give Quist all of her packages and also refused to hand over a piece of furniture that Quist had stored at the building in anticipation of closing on the unit. (*Id.* ¶ 21.)

In or about October 2022, Quist purchased a substitute unit and applied to reside with her emotional support animal there using the same documentation that she had proffered to the Association. (*Id.* ¶ 25.) The property manager in charge of the substitute unit (presumably in another building, though the complaint does not make this clear) accepted her documentation without question, and Quist was able to close on the property. (*Id.* ¶ 26.) The substitute unit is smaller than the one she original sought, cost $47,100 more, and carries significantly higher taxes. (*Id.* ¶¶ 27–28.)

On November 28, 2022, Quist filed this suit against Defendants pursuant to the court's federal question jurisdiction. 28 U.S.C. § 1331. Quist claims violations of the Fair Housing Act, 42 U.S. § 3601 *et seq.*, and the American Disability Act, 42 U.S.C. 12101, *et seq*. Quist additionally brings state law claims under the court's supplemental jurisdiction. 28 U.S.C. § 3567. Plaintiff's complaint includes seven claims: two counts alleging disability discrimination in violation of the Fair Housing Act (Counts I and II); counts alleging disability discrimination in violation of state, county, and city laws (Counts III, IV, and V), a claim of nuisance (Count VI); and a claim for intentional Infliction of emotional distress("IIED") (Count VII). (Compl. ¶¶ 29–53.)

On January 17, 2023, Defendants moved to dismiss Counts VI and VII of Quist's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Quist's nuisance claim fails because she never took possession of the property that she now claims was a private nuisance, and that her IIED claim should be dismissed because Defendants' alleged behavior was not sufficiently extreme and outrageous to support such a claim. (Defs.' Memorandum [12].) Quist has agreed to voluntary dismissal of Count VI (Pl.'s Resp. at 3) but contends the Complaint adequately alleges her IIED claim. As explained here, the court agrees.

**DISCUSSION**

Rule of Civil Procedure 12(b)(6) tests whether the complaint "contains any set of facts" that give rise to a right to relief. *United States v. Lewis*, 411 F. 3d 838, 842 (7th Cir. 2005). To survive the motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is plausible when the complaint alleges enough facts to draw the reasonable inference that the defendant is liable." *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020). When deciding such a motion, the court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181.

To successfully bring an intentional infliction of emotional distress claim under Illinois law, a plaintiff must establish that: "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier v. Feltmeier*, 207 Ill. 2d. 263, 269, 798 N.E.2d 75, 80 (2003)). The courts use forceful language in defining conduct that would support such a claim: Conduct that is "outrageous" is "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Id.* at 566 (quoting *Feltmeier*, 207 Ill. 2d at 271, 798 N.E.2d at 80–81). The court looks to "all the facts and circumstances of a particular case" in determining whether conduct is extreme and outrageous. *Id.* at 567 (quoting *Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003)). On their own, "insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not suffice. *Id.* at 566. As a rule of thumb, the Illinois Supreme Court has instructed that conduct is extreme and outrageous "where recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Jackson v. City of Joliet*, No. 19 C 7284, 2020 WL 5800733, at *5 (N.D. Ill. Sept. 29, 2020) (quoting *Doe v. Calumet City*, 161 Ill. 2d 374, 392–93, 641 N.E.2d 498, 507

4

(Ill. 1994)). The distress inflicted must be such that no reasonable person could be expected to endure it. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993); *see also McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (1988).

### A.    Extreme and Outrageous Conduct

Defendants contend that Ms. Quist has failed to allege extreme and outrageous conduct for two reasons. Defendants first argue that, in the housing context, denial of an accommodation request alone is insufficient to support an IIED claim. *See, e.g.*, *Stevens v. Hollywood Towers & Condo. Ass'n*, 836 F. Supp. 2d 800, 812–13 (N.D. Ill. 2011); *Roseborough v. Cottonwood Apartments*, 94 C 3708, 1994 WL 695516, at *3–4 (N.D. Ill. Dec. 9, 1994). Defendants further point out that, under Illinois law, Defendants were entitled to request additional information from Ms. Quist in order to process her accommodation request. (Defs.' Reply at 5 (citing 310 ILCS 120/10(d)).) But these arguments rest on an overly-narrow view of Ms. Quist's allegations. Her claim is not based solely on Defendants' denial of her accommodation request but also on the inhumane and insulting treatment she faced in the aftermath of the denial.

Defendants next contend that Quist's allegation that unidentified staff members called her a "monkey" on two occasions is also insufficient to state a claim. Defendants compare this case to others in which courts have denied recovery to plaintiffs alleging that they were subject to a continuous series of intentionally discriminatory acts. First, in *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 566 (7th Cir. 1997), the Seventh Circuit reversed the entry of judgment on a jury verdict against a defendant employer on the plaintiff's IIED claim. The court held there that the employer's actions did not amount to extreme and outrageous conduct despite evidence that the employer knew plaintiff suffered from a bipolar disorder, fired him because his disorder required him to work reduced hours, informed plaintiff that he was terminated over the telephone while he was on vacation, and falsely told him that low productivity was the reason for his termination. *Id.* at 569. Defendants next cite *Bannon v. Univ. of Chicago*, 503 F.3d 623, 630 (7th Cir. 2007), where the Seventh Circuit affirmed summary judgment for the defendant employer. The court

reasoned that plaintiff could not show extreme and outrageous conduct based on evidence of "being excluded from some meetings, being denied the responsibility of organizing meetings, being forced to attend a few unpleasant sessions with [her employer's] general counsel that led to no disciplinary action, and having a mean boss who sometimes told her she was stupid." *Id.* at 630.

*Van Stan* and *Bannon* differ from this case in at least three ways. First, both are employment cases, in which the standard for proving an intentional infliction for emotional distress claim is particularly high. *See Trahanas v. Nw. Univ.*, 64 F.4th 842, 860 (7th Cir. 2023) (citing *Richards*, 869 F.3d at 567, and observing that liability for emotional distress "'is even more constrained'" in employment cases). Second, both cases presented full evidentiary records; neither the *Van Stan* nor the *Bannon* court disposed of the plaintiff's IIED claim on a motion to dismiss. Third, Defendants' alleged treatment of Ms. Quist, taken as a whole, may well be more egregious than the conduct at issue in *Van Stan* and *Bannon*: in this case, the Association's employees allegedly blocked Quist's efforts to receive an accommodation for her medical needs, treated her like a thief by requiring that three security officers accompany her when she returned to retrieve her belongings, refused to return a piece of her furniture, and twice referred to her using language that can be interpreted as a racial slur. Looking to the totality of the facts alleged in the light most favorable to Ms. Quist, the court declines to dismiss Plaintiff's IIED claim on motion.

### B.    Remaining Elements

In their reply brief, Defendants argue that Ms. Quist has failed to plead the remaining two elements of her IIED claim. They contend that she failed to allege both that Defendants knew that their actions would lead to severe emotional distress and that their conduct actually caused such distress. Again, however, the court concludes Ms. Quist's allegations satisfy pleading standards. Quist alleges that Defendants "repeatedly harassed and humiliated Plaintiff, imposing unreasonable demands and restrictions on her disability disclosures, making her feel unsafe and

6

unwelcome and inferior from the other residents." (Compl. ¶ 51.) Such allegations support the

reasonable inference that Defendants knew their actions would cause severe emotional distress;

indeed, in light of her accommodation request, Defendants knew she had medical conditions that

require emotional support and thus was likely prone to suffer distress. Plaintiff further alleges that

"as a direct result" of her interactions with the Defendants she experienced "extreme and severe

emotional distress" (*id*. ¶ 52), which manifested in panic attacks, exacerbation of an existing heart

condition, weight loss, and hair loss (*id.* ¶ 18). True, as Defendants observe, Plaintiff was in the

process of buying a home, a process that by itself could generate stress. (Defs.' Reply at 5–6.)

But whatever the merits of that position may be at summary judgment or at trial, it has no bite

here: the Complaint expressly alleges causation, which the court finds plausible at this stage. In

all, Plaintiff has sufficiently pleaded her claim.

## CONCLUSION

Defendants' motion to dismiss Plaintiff's IIED claim [11] is denied.

ENTER:

Dated: June 7, 2023

_____
REBECCA R. PALLMEYER
United States District Judge